And the next case is United States v. Arterbury, case 18-5085. Mr. Gallant, or Gallant, I don't know which. It's Gallant, but I had a brother that spent a lot of time in New Orleans, so I remember him. I've been called Bruce. Okay, alright. My answer to hey is the way I put it. Alright. Good morning. I'm pleased to court. My name is Lance Hopkins. I am the attorney for Mr. Arterbury. Okay. And our contention is that the district court erred in denying our motion to suppress on the basis of collateral estoppel. Collateral estoppel precluded the government from relitigating the suppression of the evidence that had been litigated in the first case. The government could have and should have followed through with this direct appeal, but it dismissed its appeal of that case. And I submit to the court that the fact that jeopardy had not attached does not make criminal collateral estoppel, does not make that doctrine of criminal collateral estoppel inapplicable. Has any Tenth Circuit case ever said that? Tenth Circuit's silent. I couldn't find anything. That's why we're talking about law from other circuits. Does it matter that you agreed to dismiss without prejudice? You could have insisted and probably should have, maybe, that fine, you've dismissed your appeal and we're ready for trial, Your Honor. And there the government would have stood with no evidence and probably the case would have been dismissed with prejudice or would have lost the jury trial. But instead you agreed to dismiss without prejudice and so why would we apply collateral estoppel to that? Okay. I wasn't the attorney in the first case, but I will submit that that really wasn't foreseeable. I do think, now here's my, here's my, here's my, It wasn't foreseeable. It was certainly an issue that was being bandied about the United States, different courtrooms, right? I guess from that standpoint it would be foreseeable, but, you know, collateral estoppel, what we're saying, the issues in that motion to suppress, that evidence that was suppressed, was fully litigated to finality. The government dismissed their appeal and they didn't move to refile their appeal in the required amount of time. That's final. That's dead. Now, dismissal without prejudice. So I asked my clerk, as we were kicking this around, I said, so why don't we have law of the case? Because you already had a ruling and the ruling is appealed and the appeal is dismissed, so the previous ruling then stands unchallenged and the law is established. And so we do some research and the clerk comes back and he says, well, it's not law of the case because counsel concedes that point. And I said, what? They're conceding that the previous ruling isn't controlling? Well, they're conceding it because there's been an intermediate change in the law. So we follow that little bunny trail. Well, let's see what the change of the law is. There hasn't been a change of the law in the Leon exception. Correct. There hasn't been a change in the law about this case. There hasn't been any change in the law at all. There's been an application of law to fact in another unrelated case. Correct. That has gone on appeal and is published. But it's not this case. And those determinations are made on a case by case basis. So we have ourselves a perfect little civil procedure question, right? And trial practice question. And you're telling us that, oh, well, yeah, you should apply law of the rule of the case principles, but don't call them that. Call it collateral estoppel. Well, it's interesting. Am I correct so far? Yeah, for the most part, yes. This case started a year ago. And when I first sat down to draft my motion, I did all my legal research. I pursued law of the case. And I was going to make a law of the case argument. But for some reason, I made a decision that... That there was an iterative change of the law. Not really. Then what was the basis of your decision? I'm trying to remember. Oh, boy, this is a hell of a time to start trying to remember. For the appellate court, 10th Circuit. I understand. Fifty law students and you're... Oh, boy. There was something that I saw that I remember that... I wonder what could have been, Judge. It was about a year ago, and I thought that collateral estoppel was a better fit. The reason you abandoned that theory was that you were apparently conceding that... What's the name of the case that's come down since from one of our other panels? Workman. Yeah, the Workman affected a change in the intervening law. It's coming back to me. Oh, good. I think, from what I remember, law... I couldn't get around Workman through law of the case, but I could do it with collateral estoppel. That's the truth. That's what we think. So that's where we are, but I had a question. You say at one point that the refiling of the case was a violation of procedural due process rights. I'm a little unclear on whether you're making one argument based on collateral estoppel and, I guess, some due process component applying to collateral. Or are you making a separate due process argument? That's a good question, Judge, and I thought about that. I think that what is appropriate is just a regular old collateral estoppel analysis. The element, you know, identity of parties, identity of issues, and issue litigated to finality. I think that would be a more appropriate way to go about it than the district court went about it. Now, I do believe that there are due process principles that are involved in criminal collateral estoppel, independent of the double jeopardy clause. Well, you need to have something because the double jeopardy clause, there was no jeopardy here. True, jeopardy never attached, so you need something beyond double jeopardy to get collateral estoppel back on the table. Correct? Correct. And that's why I cited the case of United States v. DeAngiomo v. Reagan, where the Second Circuit did a thorough analysis of that issue. Now, I thought they did a great analysis of that issue, although at the end of the day it was dictum because they said that Mr. DeAngiomo had not made the objection to preserve it. But for him failing to preserve the record, they would have ruled favorably in his case. Well, at the time that you filed, was it you at that time? Your predecessor or you? The initial stages of this case. Oh, this case? Yeah. The second case was me. All right, so the first case. The first case, because that was the other guy. All right, the other guy. When the other guy made his motion, the government had plenty of opportunity to raise Leon at that time, right? Exactly. And they didn't. And they chose not to. They chose not to. So they either forfeited or they waived the right to now come over here and start arguing it. That's what we're arguing. Yeah. You're saying, hey, by the fortuity of the application of law, but they're relying on an intervening change of the law. And it would strike thunder over the skies of Provo if we ruled today in the Tenth Circuit that the Leon exception had been changed. Correct. And the Supreme Court would say, on what authority does the Tenth Circuit have to change Supreme Court precedent? So it isn't Leon that's been changed. It's this application in another unrelated case, correct? Right. What we're saying is that Workman involved an application of existing law, Leon. Just because Workman found that the District Court of Colorado aired an application of the law, that's not a change in the law. Leon, there was nothing stopping the government from the first case, from appealing that and arguing that case all the way through and arguing Leon. Except now they're stopped from doing it because they didn't do it. Exactly. And it's too late.  That's your argument. That's my argument. Okay. So now we understand it. Do you sit down and then wait to hear the other side or do you want to keep going? I'll reserve my time. Can I just ask a question about this change in the law? I understand that Leon sided way back then and nobody's changing that. But the Workman decision, had the District Court known about it, or if it had happened before, it would have come out the other way, correct? Yeah, if it had come out before. Right. But a change in controlling precedent is not necessarily a change in the law. It's just in how you apply Leon. Yeah. Well, I understand that Leon hasn't changed, but in terms of an application of the law, that did change. Correct. So what does change in the law mean? It's kind of a general expression. Does the Supreme Court have to come along and say, we don't think Leon applies anymore? Or is it a much more narrow situation where the legal landscape relating to these search warrants that are being issued out of the Eastern District of Virginia and whether they can be used or not, the Tenth Circuit comes along and finally says, this is the way it is. So now we know. Why couldn't that be a change in the law? Well, it gets down to whether a change in controlling precedent is a change in the law. And I submit that it's not. And there are so many overlapping principles between criminal and civil cases that in my reply brief, the government raised the change in law. I cited a couple of the civil cases that I think are pertinent as to why the change in precedent or that Workman was not a change in the law. Bryant v. Merit Systems Protection Board, 878-513-20. A Montana case. While you do that, let me ask you this. Isn't your best answer to Judge Matheson, Montana v. U.S., where the court held that the reference to legal principles, in quotes, could suggest a broader meaning than this case, for example, that the legal principle here is Leon, not its particular application? Yeah, my argument is if Leon had changed, if there was a change in Leon, then we'd have a change in the law. But appellate courts have been applying Leon every day since 1984. I had a case three years ago out of the Western District of Oklahoma where the district judge applied the Leon good-faith exception and we were able to win it because this case said, no, that's not good faith. That falls within one of the Leon good-faith exceptions to the exception, so to speak. That didn't involve a change in the law. It was just the appellate court looked at it differently than the district court did in applying Leon. Do you know why the government's appeal was dismissed? I don't know. Okay, that's all I wanted. One thing that's interesting about that is... Do you want to reserve time or do you want to talk? I'll reserve time. Take your choice. I'll answer Judge Hill's question, then I'll reserve. What's interesting is that the same attorney in main justice represented the government on direct appeal in my client's first case. And right before his brief was due, he dismissed. That's the same attorney that represented the government in Workman. Thank you. May it please the court and counsel, I'm Jeff Gallant for the United States. On that last point, maybe we could start on that last point. Was the appeal dismissed because it was untimely? It was not dismissed because of that. It is not in the record why it was dismissed. Was it untimely? And I'm not swearing to you, but it looked like it was a couple of days late. I don't believe it was. It's not in the record, Your Honor, and I don't know. To start, first of all, with the idea that we waived this, the Leon issue was argued below. If you go to the record, Volume 1, I think it's— Was it argued in your petition for appeal? Was that one of the issues? On Artebury 1, it was argued at the district court level. I can't say whether it was argued in the dismissed appeal, but before the district court— So you argued it and lost. Yes, and if you look at the record on— So now you're wanting us to save you from your previous loss by virtue of a little stroke of luck that says that all of a sudden this other case comes out and now you want to take advantage of it. Yes, Your Honor, because there was a change of law, and if I could, first of all— As Judge Anderson, one of my favorite jurists, used to say, this is not a debating society. We hear cases, we resolve cases, we apply law to cases and resolve them on that basis, and all of that is ancient history. That was done. Whether you waived it, whether you forfeited it, whatever, you lost. Now you want to relitigate the very same principle on the basis of the greatest legal principle of all, luck. Look, that is—basically you're standing there. Why don't you just say it? Because we were lucky, and I want to take advantage, Judge, of our luck. Well, no, no, there was a change of law, Your Honor. Stop there. Stop there. Just pause, because I'm not sure what you mean by that. Change of what law to what law? I absolutely will. Can I just cite the record where Judge Cleary starts talking about the good faith exception in Arterbury 1 in the district court? It was volume 1, page 55. The law changed. To take the defendant's argument to the extreme, no Fourth Amendment law has ever changed, because the Fourth Amendment says what it says, and we're just changing the application of it. What's the first law that later changed? The district court holding? And precisely what changed is Judge Cleary held that as a matter of law, Leon was inapplicable to the playpen search warrant because it was ab in nido, because it never—it didn't exist, as Judge Lucero and you were on the workman panel. That's what—that's the law. That's the matter of law. Nothing final about that. To say that's the law, that's one stage. No, that was the legal decision that Judge Cleary and then adopted by Judge Payne that they made. That's the matter of law that workman changed. And it's all just subject to being appealed. Well, and we did, and we voluntarily dismissed it, but it was the case. For reasons unknown. You're not prepared to tell us today why the appeal got dismissed. In all candor, I don't know, Your Honor. So we went in the chambers, and we said, has there been a change in the law? So we went to the restatement second of judgments. The restatement states, the exception is whether a new determination is warranted in order to take account of intervening change in the applicable legal context. It's not the law, the legal context. And a comment describes the test as whether, quote, an intervening change in the relevant legal climate. Would you agree with me that the relevant legal climate is legal? No, Your Honor. What changed was Judge, there was no workman case, and everyone agrees. I think Judge Madison's question's on point. If workman was in place when Judge Cleary and Judge Payne ruled, they would have applied workman, and he would have lost. And we have another jurist on our court, that's Baldock, and he says if ifs and buts were candy and nuts, we'd all have a merry Christmas. The fact is that you raised Leon. You, as we said, you either lost, you waived, you forfeited, you something, but you appealed. Then you voluntarily dismissed your appeal. And now you want us, like Superman, to roll the clock backward to this other ruling that we set in another case and want us to save you from your previous... Well, that's exactly it. We want to do it precisely because the Tenth Circuit has come out with binding authority that changed the law, that changed Judge Payne and Cleary's ruling that the playpen warrant was somehow ab in ito, and as a result, Leon did not apply. That was a legal holding. There was no binding precedent in the Tenth Circuit. Judge Cleary relying on... No, but there was the law of the case. Well, which they conceded, which they never raised, Your Honor. Well, excuse me. Is there such a thing as a final ruling on a motion to suppress that? Well, I think that's where you get to the action itself. When either jeopardy attaches or the case is otherwise dismissed, like an Oppenheimer case going back to the 1916 case, that was dismissed based on statute of limitations grounds, and Judge Holmes said that's a final decision on the merits. So when there's a final decision on the merits, that is when the action is over. How long could you have waited for Workman in this case? How long could you have waited for Workman? Waited? What if Workman were decided 10 years from now? The statute of limitations would have run. There's the 5 years statute of limitations. So up to 5 years. And then there's another protection. It just hangs in the background of this case, but there's another protection to the defendant. There's the law of the case, which they explicitly decide not to go, and then there's Rule 48 itself, where Judge Phillips alluded to. They could have asked that the case initially be dismissed without prejudice, or when we charged again under the doctrine, it's in U.S. v. DER, D-R-R, they could have gone back and said there was abusive discretion in dismissing it without prejudice in the first case. So there is protections built in to the defendants in these kind of cases. In other words, if it had been dismissed with prejudice, then you would concede you had nowhere to go. Yes, Your Honor. If this was dismissed with prejudice, we would have nowhere to go. If Workman never came out as binding 10th Circuit precedent, we would have nowhere to go. It's really this unique set of facts where there was no adjudication on the merits below, and there's a binding precedent that changed the law. Not some general principle, but specifically with respect to the playpen search warrant, where the court in Arterbury 1 said it's void ab nido, Leon does not apply, and as Judge Egan talked about it, the principle of law is the extension, the application of Leon. And this court and courts around the country all the time make law with respect to the application of Leon and the application of Fourth Amendment. You can't say those aren't legal decisions you're making. Counsel? Yes. We've been spending a lot of time on this change of law issue, and it seems as if you're either conceding or assuming that criminal collateral estoppel actually applies in this situation. Let me just finish it, and I'll let you answer. There's no Tenth Circuit, as your opposing counsel acknowledged, no Tenth Circuit case that says criminal collateral estoppel even applies unless jeopardy is attached. So what's your position on that? There is good reason to believe it is tied to the double jeopardy clause, Your Honor, and although the Tenth Circuit has never held directly one way or the other, in the U.S. v. Brown case written by Judge Phillips, he ties collateral estoppel to the double jeopardy clause. And the only case that he relies on, the Second Circuit case, I'm not going to try to pronounce the name in front of 50 law students, but it's a thin reed. It's in dicta. And then the Evans case he relies on has been overruled by the Fifth Circuit, so there's really very little to go on to import this sort of some vague Fifth Amendment due process link to the collateral estoppel. So if the court wishes, I think this very easily could say, based on the Tenth Circuit law to the extent there is, the collateral estoppel only applies when jeopardy attaches. All right. Different question. On this change of law issue again, it seems as if the change of law concept has become rooted on the civil side, but does it even apply to criminal collateral estoppel? I think absolutely, Your Honor. Even every case from if you go to- Absolutely yes or absolutely no? It's absolutely yes it applies, the change of law exception, because if you look at cases like Ash and Oppenheimer and then Dinwiddie in the Tenth Circuit, they always say, although it's grounded in civil law, the collateral estoppel applies in criminal. They never carve out an exception for change of law, and I would say that's because at its core- What's your authority for that statement? Well, because they always say it just applies. They? Who's they? Oppenheimer Court, Ash versus Swenson, and Dinwiddie. They say collateral estoppel also applies in criminal, and they never have an exception and say, oh, change of law doesn't apply. And it's because, I think, because at its core, what collateral estoppel is about is we're not going to re-litigate the same issue. There you go. Now let me cite some authority for you. Sure. So we're trying to figure out, does the Workman decision affect the change of the law, and do we apply it or not? And here's what the restatement says. The restatement states that the courts should assess several factors in determining whether we apply the exception. The courts have to weigh, quote, the concept that the outcome of similar legal disputes between the same parties at different points in time should not be disparate. End quote. Against the other side of the proposition, the notion, quote, that the outcome of similar legal disputes being contemporaneously determined between different parties should be resolved according to the same legal principles. So here you have the same parties. As Judge Phillips has noted, the court has already ruled. You've appealed. You've dismissed. So there's this ruling standing. And now you want us to say that among these parties, we should flip the rule and now apply a different rule. So we have a choice. Do we want to be uniform, or do we want to try this case on the merits? And therein lies our dilemma. In uniformity, Your Honor, the Tenth Circuit has ruled what the law should be. And why I get back to change of law is an important part of collateral estoppel is when we're talking about a legal issue, we mean applying the law to the facts. So in Ardaberry 1 and Ardaberry 2, it's not really the same issue anymore because the law has changed. Before Ardaberry 1, Judge Payne and Clary did not have the benefit. If you're writing the headlines for the newspaper reporting this case, you would report the case, government gets lucky. They lost the case, and then they won the case. They lost the ruling, then they won the ruling. Is that the way you'd write it, or would you say luck has nothing to do with it? I would say that Workman changed the law would be my headline. And it's fortuitous in the sense of... But it was too late for us? It's not. I don't quite follow, Your Honor. When Workman changed the law, he did not have the case dismissed with prejudice, so he knew the case could be refiled. So there's no unfairness to him. Is it the functional equivalent if you were late on your appeal? If you were two days late, and that's why the government dismissed, is that the functional equivalent of dismissing with prejudice? Case over, right? You're late. No, because there's still the underlying district court case. Like Judge Egan had pointed out... Even if your appeal, you had a time to appeal and you missed it? Obviously that's a different case, but I would say no, because as Judge Egan pointed out in her opinion, we are not asking to reappeal Artebery 1. We're asking to charge him based on the current state of the law today. Counsel, let me ask you about her opinion. Because ultimately... And we're reviewing the district court. It seems that ultimately what the district court did was apply a rather general due process, fairness analysis to all of this. And all of the technical discussion we've been having up to now is an interesting discussion, but that isn't what the district court ultimately landed on to make its decision. Is the way in which the district court resolved this case an appropriate way to do it? Yes, I only have six seconds. Can I finish my answer? The district court obviously departed from what both the parties had said. I do think just applying the change of law exception is a cleaner, simpler, more consistent, with 10th Circuit precedent, like Dinwiddie, way to approach this case. But the judge, in analyzing the fundamental fairness factors, found that the government didn't do anything wrong, that it would be fundamentally fair to pursue... I think that was an appropriate analysis, and the court applied those factors, weighing at the end that it weighed in favor of the government, which I think was an appropriate calculation of those factors. And I should say that the defendant doesn't even engage with those factors. So in my view, he's conceding that, under that analysis of the fundamental fairness, the government acted appropriately. So I'd ask you to affirm the district court. We have some time. Yes, I'd like to respond to what Mr. Gallant said regarding Evans. I don't believe the Evans case, which was a district court case in the Eastern District of Louisiana, which is within the 5th Circuit, was overturned by the Showery case. Evans was decided by the Eastern District of Louisiana in February of 87. Showery came out in April of 87. Showery doesn't even mention Evans. And when you look at the facts in Showery, it's so different than what we're looking at here. In Showery, the petitioner filed a petition for writ of habeas corpus to bar the state of Texas from prosecuting him for involuntary manslaughter that was allegedly committed while he was free on a pellet bond that had been granted while he was appealing his first murder conviction. Showery is so different from Evans, I think it's a stretch to say that it overruled it. And with that, court, any more questions? Nothing further? Thank you. The case then is submitted. Counsel are excused. We thank you for your presentation today and we'll then turn to our session with the students. If you take just a couple of minutes to have counsel excuse themselves, then we'll start.